Marian FRASER, Appellant

v.

STATE of Texas, Appellee

No. 07-15-00267-CR

Court of Appeals of Texas, Amarillo.

June 9, 2017

E. Alan Bennett, Waco, for Appellant.

David L. Richards, Fort Worth, for Appellee.

Before CAMPBELL and HANCOCK and PIRTLE, JJ.[1]

## OPINION

Patrick A. Pirtle, Justice

Appellant, Marian Fraser, was convicted of the offense of murder[2] and sentenced to fifty years confinement and a fine of $10,000. Her appeal addresses a unique issue regarding application of the felony-murder rule—specifically the question of whether a defendant may be convicted of the offense of murder, pursuant to the provisions of section 19.02(b)(3) of the Texas Penal Code, when the underlying felony is either *reckless* or *criminally negligent* injury to a child or *reckless* or *criminally negligent* child endangerment, and the acts that constitute those offenses are the same "act clearly dangerous to human life" charged in the indictment. Finding the State's theory of prosecution and arguments, and the court's charge and instructions, allowed for a murder conviction on a basis not authorized by law, we reverse Appellant's murder conviction and remand this proceeding to the trial court for a new trial.

## BACKGROUND

In 2012, Appellant operated a state-licensed child daycare center out of her home in Waco, Texas. Appellant customarily limited her care to twelve infants, all under the age of two years. The infants were kept on a well-defined daily schedule that included a naptime between the hours of 12:00 and 3:00 p.m. Four-month old Clara Felton was one of the infants placed in Appellant's care. On March 4, 2013, Clara was found by Appellant in her nap room unresponsive and not breathing. Despite the best efforts of the first-responder emergency medical personnel and hospital staff, Clara was later pronounced dead. Subsequent toxicology tests revealed a toxic level of diphenhydramine in Clara's blood. Diphenhydramine is an antihistamine commonly used as the active ingredient in over-the-counter medications such as Benadryl, Tylenol P.M., and other medications commonly used to treat allergy and cold symptoms.

On January 22, 2014, a McLennan County Grand Jury indicted Appellant for the offense of murder pursuant to the provisions of section 19.02(b)(3) of the Texas Penal Code, based upon the theory she "did then and there commit or attempt to commit an act clearly dangerous to human life, namely, by administering diphenhydramine to [the victim] and/or causing [the victim] to ingest diphenhydramine, which caused the death of [the victim], and the said [Appellant] was then and there in the course of or attempted commission of a felony, to-wit: Injury to a Child,"[3] (Para-

---

1. Justice Mackey K. Hancock, retired, not participating.

2. TEX. PENAL CODE ANN. § 19.02(b)(3) (West 2011). An offense under this section is commonly referred to as a "felony-murder" due to the requirement that the defendant commit or attempt to commit an underlying felony offense, other than manslaughter. An offense

under this section is a felony of the first degree. *Id.* at (c).

3. TEX. PENAL CODE ANN. § 22.04(a) (West Supp. 2016). A person commits the offense of injury to a child if she intentionally, knowingly, recklessly, or by criminal negligence causes bodily injury or serious bodily injury to a child fourteen years old or younger. Although

graph I) or "Endangering a Child"[4] (Paragraph II).

In May 2015, a jury trial commenced and Appellant entered a plea of not guilty. During that trial, the State presented expert testimony establishing that, although diphenhydramine is generally considered to be a safe drug when properly administered, it can become lethal if it builds up in a child's system, either through repeated smaller dosages over a period of time or by the administration of one large dose. The State's expert witness explained that because diphenhydramine can cause sedation, it should not be given to children under age two. The witness further established that it takes approximately two years for a child's liver to fully develop and that the giving of medications to a child whose liver is not yet fully developed "can have unknown consequences and sometimes death . . . ." Accordingly, the expert opined that causing diphenhydramine to be ingested by a four-month old infant constituted "an act clearly dangerous to human life."

Appellant testified in her own defense. While acknowledging that giving diphenhydramine to an infant child under two years of age was potentially dangerous, she denied she was the person who administered it to Clara. Appellant insisted infants in her care were never given any substance containing diphenhydramine. The State, however, produced significant

circumstantial evidence to the contrary. For instance, hair follicle samples from fourteen other children who had been under Appellant's care, taken subsequent to Clara's death, all tested positive for diphenhydramine. Evidence also showed that, while at the daycare, Clara was never given any medications by any person other than Appellant. Furthermore, prior to their naptime, Appellant always prepared the children's bottles. Clara's parents further denied ever giving her any medication containing diphenhydramine. Also, following Clara's death, in a conversation regarding the "licensing lady" being at the daycare facility, Appellant sent a text message to her daughter asking her to move "the kids [sic] medicine that is in the cabinet in the daycare room [to her] closet. Just in case she looks."

The general abstract provisions of the *Charge of the Court* given at the guilt/innocence phase of the trial stated that "a person commits the offense of murder if she commits or attempts to commit a felony, other than manslaughter, and in the course of and in furtherance of the commission or attempt, or in immediate flight from the commission or attempt, she commits or attempts to commit an act clearly dangerous to human life that causes the death of an individual." Manslaughter was never defined in the charge and the application paragraph omitted the provision "other than manslaughter" altogether.

---

the indictment did not specify the State's theory as to how Appellant committed the offense of injury to a child, the *Charge of the Court* at the guilt/innocence phase of trial included all four culpable mental states. An offense under this provision can range from a first degree felony to a state jail felony depending on the culpable mental state of the actor and the nature and degree of the victim's injuries. *Id.* at § 22.04(e), (f), and (g).

4. TEX. PENAL CODE ANN. § 22.041(c) (West 2011). A person commits the offense of child

endangerment if she intentionally, knowingly, recklessly, or by criminal negligence, engages in conduct that places a child younger than fifteen years old in imminent danger of death, bodily injury, or physical or mental impairment. Although the indictment did not specify the State's theory as to how Appellant committed the offense of child endangerment, the *Charge of the Court* at the guilt/innocence phase of trial included all four culpable mental states. An offense under this provision is a state jail felony. *Id.* at § 22.041(f).

Concerning the issue of culpable mental states, the charge included the full statutory definitions of intentional, knowing, reckless, and criminal negligence, without any effort being made to distinguish result-oriented offenses from conduct-oriented offenses. The jury was also charged on three "lesser offenses" of: (1) "injury to a child causing serious bodily injury" by intentional or knowing conduct, (2) "injury to a child causing serious bodily injury" by reckless conduct, and (3) "endangering a child" by intentional, knowing, or reckless conduct. The charge did not include manslaughter as a lesser-included offense.

After being charged by the trial court, the jury convicted Appellant of felony-murder in connection with Clara's death. The jury then assessed Appellant's sentence at fifty years confinement and a fine of $10,000. By six issues, Appellant contends (1) the evidence is legally insufficient to support a conviction for felony-murder, (2) the evidence is factually insufficient to support a conviction for felony-murder, (3) the trial court erred by admitting a "grossly excessive number of extraneous offenses," (4) the trial judge violated her right to a fair and impartial judge, (5) the charge of the court contained egregious errors, and (6) the charge of the court erroneously allowed a felony-murder conviction based on reckless or criminally negligent conduct. The substantive objection underlying issues one, two, and six is not the sufficiency of the evidence to support Appellant's conviction, but is, instead, whether she may be convicted of the offense of murder, pursuant to the felony-murder provisions of section 19.02(b)(3), when the underlying felony is either *reckless* or *criminally negligent* injury to a child or *reckless* or *criminally negligent* child endangerment, and the acts that constitute those offenses are the same "act clearly dangerous to human life" charged in the indictment.

Because issues one, two, and six are subsumed within the general question of whether reckless or criminally negligent conduct can form the basis of a precedent felony offense sufficient to support a felony-murder conviction, we will discuss those three issues together. While our resolution of those issues renders unnecessary the consideration of issues three, four, and five, because we are remanding this matter to the trial court for further proceedings, in the interest of justice, we will address those issues separately. *See* Tex. R. App. P. 47.1.

Issues One, Two, And Six—Felony-Murder

Standard of Review

While Appellant's first two issues address the legal and factual sufficiency of the evidence to support her conviction, the only standard that a reviewing court should apply in determining whether the evidence is sufficient to support a conviction is the standard set forth in *Jackson v. Virginia*, 443 U. S. 307, 99 S. Ct. 2781, 61 L.Ed. 2d 560 (1979). *See Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010). When examining the sufficiency of the evidence, appellate courts view the evidence in the light most favorable to the verdict. This requires the reviewing court to defer to the jury as the sole judge of the credibility of witnesses and the weight to be given their testimony, giving "full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319, 99 S.Ct. 2781. A reviewing court must therefore determine whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict. *Clayton v. State*,

235 S.W.3d 772, 778 (Tex. Crim. App. 2007) (citing *Hooper v. State*, 214 S.W.3d 9, 16-17 (Tex. Crim. App. 2007)). When the record supports conflicting inferences, a reviewing court must presume that the fact finder resolved the conflicts in favor of the verdict and defer to that determination. *See Jackson*, 443 U.S. at 326, 99 S.Ct. 2781; *Temple v. State*, 390 S.W.3d 341, 360 (Tex. Crim. App. 2013). After applying this analysis, if a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt, then the evidence is sufficient. *See Jackson*, 443 U.S. at 319, 99 S.Ct. 2781; *Brooks*, 323 S.W.3d at 895. Furthermore, the "sufficiency of the evidence should be measured by the elements of the offense as defined by the hypothetically correct jury charge for the case." *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997).

## MURDER

In Texas, there are three statutorily-defined ways to commit the first degree felony offense of murder. First, a person commits the offense of murder if she *intentionally* or *knowingly causes the death* of an individual. *See* TEX. PENAL CODE ANN. § 19.02(b)(1) (West 2011). Secondly, a person commits the offense of murder if she *intends* to cause serious bodily injury and commits an act clearly dangerous to human life that *causes the death* of an individual. *Id.* at § 19.02(b)(2). Thirdly, a person commits the offense of murder if she commits or attempts to commit a felony, *other than manslaughter*,[5] and in the course of and in furtherance of the commission or attempt, or in immediate flight from the commission or attempt, she commits or attempts to commit an act clearly dangerous to human life [6] that *causes the death* of an individual. *Id.* at § 19.02(b)(3).

In each of these three subparts of section 19.02(b), the statutory focus and, therefore, the gravamen of the offense of murder is *causing the death* of an individual. Because of this statutory definition, murder is generally described as a "result-oriented" offense, meaning the proscribed conduct must have *caused the death* of the victim, as opposed to simply engaging in conduct that *results in the death* of the victim. *Schroeder v. State*, 123 S.W.3d 398, 400 (Tex. Crim. App. 2003); *Cook v. State*, 884 S.W.2d 485, 490 (Tex. Crim. App. 1994); *Anaya v. State*, 381 S.W.3d 660, 664 (Tex. App.—Amarillo 2012, pet. ref'd); *Chaney v. State*, 314 S.W.3d 561 (Tex. App.—Amarillo 2010, pet. ref'd). This is an often overlooked subtle, but critical, distinction.

## MANSLAUGHTER

Manslaughter is also a result-oriented offense because a person commits that offense if she recklessly *causes the death* of an individual. *Britain v. State*, 412 S.W.3d 518, 520 (Tex. Crim. App. 2013); *Bigon v. State*, 252 S.W.3d 360, 371 (Tex. Crim. App. 2008); *Atkinson v. State*, No. 13-16-00344-CR, 517 S.W.3d 902, 905–05, 2017 WL 2200317 at *3, 2017 Tex. App. LEXIS 2255 at *8 (Tex. App.—Corpus Christi March 16, 2017, no pet. h.). Therefore, the only distinguishing difference between murder and manslaughter is the

---

**5.** A person commits the offense of manslaughter if she recklessly causes the death of an individual. TEX. PENAL CODE ANN. § 19.04(a) (West 2011). An offense under this section is a felony of the second degree. *Id.* at 19.04(b).

**6.** "[T]he felony murder statute makes clear that the 'act clearly dangerous to human life' must be the cause of the death of the victim." *See Rodriguez v. State*, 454 S.W.3d 503, 507 (Tex. Crim. App. 2014) (finding no "act" in the starvation of a child, reversing a felony-murder conviction, and reforming the judgment to reflect a conviction for injury to a child).

*mens rea*, or the culpable mental state associated with the result of the defendant's conduct. *Britain*, 412 S.W.3d at 520. Even though section 19.02(b)(3) does not specify the culpable mental state associated with a felony-murder, the Texas Court of Criminal Appeals has made it clear that the underlying felony supplies the necessary *mens rea*. *See Ex parte Easter*, 615 S.W.2d 719, 721 (Tex. Crim. App. 1981).

FELONY-MURDER

▓▓▓▓ A murder offense committed under section 19.02(b)(3) is generally referred to as a "felony-murder." Essentially, to sustain a conviction for felony-murder, the State must prove (1) a specific underlying felony offense (other than manslaughter), (2) an act clearly dangerous to human life, (3) the death of an individual, (4) causation (i.e., the act "clearly dangerous to human life" must cause the death), and (5) a causal connection between the underlying felony and the dangerous act ("in the course of and in furtherance of . . . or immediate flight from").[7] Because the Texas Penal Code specifically excludes manslaughter as the underlying felonious conduct, in order to constitute "murder" pursuant to the provisions of section 19.02(b)(3), the underlying felony offense must be an offense other than manslaughter or any lesser-included offense to manslaughter. *Johnson v. State*, 4 S.W.3d 254, 258 (Tex. Crim. App. 1999).

While section 19.02(b)(3) dispenses with the inquiry into any *mens rea* accompanying the homicide itself, the theory behind a felony-murder is that the culpable mental state necessary for the underlying felony is sufficient to transfer the intent to cause death (or at least the culpable mental state required to commit an act clearly dangerous to human life not otherwise encompassed in the definition of manslaughter) to the felony-murder offense.[8] *See Garrett v. State*, 573 S.W.2d 543, 545 (Tex. Crim. App. 1978); *Ex parte Easter*, 615 S.W.2d at 721. As such, the *sine qua non* of a felony-murder is that moral blameworthiness sufficient to justify a murder conviction is supplied by the criminal conduct surrounding the act that causes death, when that conduct is clearly dangerous to human life and it is something other than the offense of manslaughter. Because the Legislature specifically excluded conduct that would otherwise be classified as manslaughter, the act which is "clearly dangerous to human life that causes the death of an individual" cannot be an act that causes the death of an individual by reckless or criminally negligent conduct.

ANALYSIS

▓▓▓▓ Here, the State's theory is that Appellant committed an act clearly dangerous to human life (administering diphenhydramine to Clara or causing her to ingest diphenhydramine), while in the course of committing the felony offense of either injury to a child or child endangerment.[9] While "injury to a child" and "child endangerment" *can* qualify as the underlying felony in a felony-murder prosecution, the two offenses do not qualify as such

---

7. While the Texas Penal Code does not define the phrase "in furtherance of," the Texas Court of Criminal Appeals has approved the contention that the "clearly dangerous act" must advance or promote the commission of the precedent felony. *Bigon*, 252 S.W.3d at 366.

8. Arnold H. Loewy, *Panel Two: Unintentional Killings*, 47 TEX. TECH L. REV. 121, 127 (2014).

9. Part of the State's theory of prosecution was that there need not be unanimity of the jurors as to whether Appellant was guilty of injury to a child or child endangerment. Because that issue was not addressed by the briefing of the parties, we express no formal opinion as to the soundness of the State's theory.

*ipso facto.* For instance, where the prosecution is based upon intentional conduct constituting injury to a child, a felony-murder prosecution would be authorized. *See Johnson,* 4 S.W.3d at 254 (injury to a child based on intentionally causing serious bodily injury). However, where, as here, neither the indictment nor the charge of the court limited the jury's consideration to conduct that was committed intentionally or knowingly (thereby permitting a conviction based upon reckless or criminally negligent conduct), we must examine the record further to determine whether the underlying felony supports a felony-murder conviction on that basis. In doing so, we must further analyze the underlying offense or offenses to determine (1) whether the offense as charged merged with the act clearly dangerous to human life and (2) whether that offense would constitute the offense of manslaughter or a lesser-included offense to manslaughter.

Our analysis must begin with an understanding of the "merger doctrine" discussed in *Garrett,* 573 S.W.2d at 546. The merger doctrine looks to see if the act constituting the underlying felony and the act resulting in the homicide were the same. *See Johnson,* 4 S.W.3d at 256 n.3. It is important to note that this query is not the same as determining whether the underlying offense is a lesser-included offense to the offense of murder. *Id.* In this inquiry, we must determine if the act constituting the underlying felony and the act clearly dangerous to human life are one and the same.

In *Garrett,* the defendant had an altercation with a store clerk. In the process of that altercation, the defendant pulled a gun in an attempt to frighten him. Unfortunately, the gun went off and the clerk was killed. Although the defendant maintained he had never intended to shoot the victim, he was nevertheless charged with felony-murder. The State's theory of prosecution was that in the course of committing the offense of aggravated assault (pulling a deadly weapon on the clerk) the defendant committed an act clearly dangerous to human life that caused the death of the clerk. The Texas Court of Criminal Appeals held that, in order to support a murder conviction under the felony-murder rule, "[t]here must be a showing of felonious criminal conduct other than the assault causing the homicide." *Garrett,* 573 S.W.2d at 546. Finding the underlying felony and the act clearly dangerous to human life resulting in death "were one and the same," the Court found the acts merged and, therefore, appellant was "improperly prosecuted" under the felony-murder rule, resulting in the reversal of his conviction. *Id.*

In 1982, the Court of Criminal Appeals reaffirmed the application of the merger doctrine set out in *Garrett,* in its opinion on original submission in *Aguirre v. State,* 732 S.W.2d 320 (Tex. Crim. App. 1982).[10] There, the indictment alleged the felony offense of criminal mischief and further alleged that in the course of and in furtherance of such felony, the defendant committed an act clearly dangerous to human life, to-wit: shooting a gun into an occupied dwelling, which ultimately caused the death of the victim. The jury charge authorized conviction for the offense of "murder" by intentionally or knowingly causing the death of an individual or, alternatively, *via* the felony-murder rule by committing an act clearly dangerous to

---

**10.** Five years later, the Texas Court of Criminal Appeals withdrew the 1982 original opinion and issued a new opinion on rehearing. *See Aguirre v. State,* 732 S.W.2d 320 (Tex. Crim. App. 1987) (op. on reh'g). The 1982 original opinion and the 1987 opinion on rehearing share the same citation.

human life in the course of intentionally or knowingly committing the offense of criminal mischief. The Court observed that if the general verdict of the jury rested upon the State's felony-murder theory, the verdict could not stand based on the principles enunciated in *Garrett. Aguirre*, 732 S.W.2d at 322-23.

After its opinion on original submission in *Aguirre*, but before its opinion on rehearing in that same case, the Court issued its opinion in *Murphy v. State*, 665 S.W.2d 116 (Tex. Crim. App. 1983). In *Murphy*, the indictment alleged the defendant committed the felony offense of arson by starting a fire in a habitation for the purpose of collecting insurance proceeds, and in the course and furtherance of the commission of that offense, committed an act clearly dangerous to human life, to-wit: starting a fire in a habitation, thereby causing the death of an individual. The appellant maintained that the merger doctrine operated to bar his prosecution because "the gist of the underlying felony, namely, 'starting a fire,' was the exact same act alleged to have been clearly dangerous to human life and thus was 'inherent in the homicide.'" Reaffirming the merger doctrine espoused in *Garrett*, the Court found that the felony-murder rule did not apply in that case because there was a showing of felonious criminal conduct other than the "assault inherent in the homicide." *Id.* at 119. While the opinion in *Murphy* is not clear as to what felonious act other than arson lead to the victim's death, in *Johnson*, the Court speculated that it was because the underlying offense was a property offense rather than an assaultive offense. *Johnson*, 4 S.W.3d at 257.

Then, on rehearing in *Aguirre*, the Court reversed its earlier ruling, holding the opinion on original submission untenable in light of *Murphy*. *See Aguirre*, 732

S.W.2d at 323. In the opinion on rehearing, the Court concluded that, like *Murphy*, the merger doctrine did not prohibit a felony-murder prosecution because the underlying felony at issue was a property offense (criminal mischief) rather than an assaultive offense inherent in the homicide.

After *Aguirre* and *Murphy*, the Court again reaffirmed the merger doctrine in *Johnson*, 4 S.W.3d at 254. In doing so, however, it retreated from the "wholesale adoption" of that doctrine in every case based on an underlying assaultive offense. The Court expressly disavowed the overly broad statement that a conviction under section 19.02(b)(3) would lie only on a "showing of felonious criminal conduct other than the assault causing the homicide." *Id.* at 258. The Court indicated that the statement in *Garrett* should not be read as standing for the proposition that *every* assaultive offense, if alleged as the underlying felony, would merge with the act clearly dangerous to human life alleged in a felony-murder indictment. *Id.* at 255. The Court then stated:

> [w]e hold *Garrett* did not create a general 'merger doctrine' in Texas. The doctrine exists only to the extent it is consistent with section 19.02(b)(3). Thus, *Garrett* hereinafter stands only for the proposition that a conviction for felony murder under section 19.02(b)(3), will not lie when the underlying felony is manslaughter or a lesser included offense of manslaughter. This holding is consistent with the plain meaning of the felony murder provision.

*Id.* at 258.

In other words, if the underlying felony conduct and the act clearly dangerous to human life were subsumed within the statutory definition of manslaughter (or a lesser-included offense), then the merger doctrine was applicable, rendering a felony-murder prosecution inappropriate. Accord-

ingly, the issue before this court is whether the underlying felony offenses of injury to a child and child endangerment, as prosecuted, and the alleged act clearly dangerous to human life were subsumed by the offense of manslaughter and therefore, merged, rendering prosecution under section 19.02(b)(3) inappropriate.

In *Johnson*, the indictment alleged that the defendant committed the felony offense of injury to a child "and while in the course of and furtherance of commission of said offense, did then and there commit an act clearly dangerous to human life, to-wit: hitting [the victim] with a deadly weapon, to-wit: a blunt object. . . ." *Id.* at 254. At trial, the State's theory was that the defendant lifted the victim "up in the air and then let go of her, letting her fall hard into the bathtub." The court's charge then instructed the jury that "a person commits the felony offense of injury to a child if the person *intentionally*, by act, causes serious bodily injury to a child who is fourteen (14) years of age or younger." (Emphasis added).[11] The appellant, relying on *Garrett*, alleged the act constituting the underlying felony and the act clearly dangerous to human life "merged," and could not, therefore, support a felony-murder conviction. Rejecting the appellant's broad merger argument, the Court found that while section 19.02(b)(3) specifically exempts manslaughter from the felony-murder rule, holding "[n]ot every 'assaultive' offense, if alleged as an underlying felony, will merge with the homicide in a felony murder indictment." *Id.* at 256. The Court distinguished *Garrett* as a case in which, as charged in that case, the underlying offense of aggravated assault (use or exhibition of a deadly weapon in the course of an assault committed *recklessly*) was a lesser-included offense of manslaughter since the essence of

the offense in that case was that the defendant recklessly caused the death of an individual. Without specifically discussing the culpable mental state actually involved in *Johnson*, the Court concluded that under the facts of that particular case, "[t]he offense of [intentional] injury to a child [was] not a lesser included offense of manslaughter." *Id.* at 258.

Two years after *Johnson*, the Court of Criminal Appeals was able to further clarify *Garrett* and its progeny in *Lawson v. State*, 64 S.W.3d 396 (Tex. Crim. App. 2001), wherein it held that an "intentional and knowing" aggravated assault could support a felony-murder conviction, because "[a]n 'intentional and knowing' aggravated assault is not a lesser included offense of manslaughter, nor is it statutorily includable in manslaughter." *Id.* at 397. Hence, an acute analysis shows that the distinguishing character between *Garrett* and *Lawson* was the fact that *Garrett* involved a *reckless* aggravated assault, whereas *Lawson* involved an *intentional* or *knowing* aggravated assault. Based on this line of precedent, we see the underlying injury-to-a-child offense in *Johnson* as being clearly distinguishable from the underlying injury-to-a-child offense in this case. In *Johnson*, the underlying offense was based on *intentionally* causing serious bodily injury to a child; whereas, in this case, the charge of the court allowed the jury to find injury to a child based on *reckless* or *criminally negligent conduct*.

Based on *Garrett* and its progeny, we find the act clearly dangerous to human life alleged in this case ("namely, by administering diphenhydramine to [the victim] and/or causing [the victim] to ingest diphenhydramine") and the underlying felony offenses of injury to a child and child endangerment are one and the same. We

---

11. While the quoted language does not appear in the opinion of the Court of Criminal Appeals, the Court's Charge is contained in the Clerk's Record of that case.

must, therefore, continue to determine whether, "consistent with section 19.02(b)(3)," the underlying offenses were subsumed by the offense of manslaughter.

An offense is a lesser-included offense if: (1) it is established by proof of the same or less than all the facts required to establish the commission of the offense charged; (2) it differs from the offense charged only in the respect that a less serious injury or risk of injury to the same person, property, or public interest suffices to establish its commission; (3) it differs from the offense charged only in the respect that a less culpable mental state suffices to establish its commission; or (4) it consists of an attempt to commit the offense charged or an otherwise included offense. TEX. CODE CRIM. PROC. ANN. art. 37.09 (West 2006). Determining whether the underlying felony offense in a felony-murder prosecution is a lesser-included offense to manslaughter is a question to be determined as a matter of law. *Bullock v. State*, 509 S.W.3d 921, 924 (Tex. Crim. App. 2016).

MANSLAUGHTER/CRIMINALLY NEGLIGENT HOMICIDE

 A person commits the offense of manslaughter if she recklessly causes the death of an individual. *See* TEX. PENAL CODE ANN. § 19.04(a) (West 2011). A person commits the offense of criminally negligent homicide if she causes the death of an individual by criminal negligence. Criminally negligent homicide is a lesser-included offense to the offense of manslaughter. *See Branham v. State*, 583 S.W.2d 782, 784 (Tex. Crim. App. 1979); *Ormsby v. State*, 600 S.W.2d 782, 784 (Tex. Crim. App. 1979).

INJURY TO A CHILD

As relevant to the facts of this case, a person commits the offense of "injury to a child" when she (1) intentionally, knowingly, recklessly, or with criminal negligence,

(2) causes to a child, (3) serious bodily injury or bodily injury. *See* TEX. PENAL CODE ANN. § 22.04(a) (West Supp. 2016). Because every "child" is an "individual" and every "death" is a both a "serious bodily injury" and a "bodily injury," the offenses of (1) reckless injury to a child (recklessly causing serious bodily injury or bodily injury to a child) and (2) criminally negligent injury to a child (serious bodily injury or bodily injury caused by criminally negligent conduct) are "established by proof of the same ... facts required to establish the offense of manslaughter" (recklessly causing the death of an individual). *See* TEX. CODE CRIM. PROC. ANN. art. 37.09(1) (West 2006). Furthermore, recklessly causing the death of an individual (manslaughter) "differs ... only in the respect that a less serious injury or risk of injury to the same person ... suffices to establish" injury to a child by either (1) recklessly causing serious bodily injury or bodily injury to a child or (2) serious bodily injury or bodily injury caused by criminally negligent conduct. *See id.* at art. 37.09(2). Therefore, as charged and prosecuted in this case, reckless or criminally negligent injury to a child was a lesser-included offense to the offense of manslaughter.

CHILD ENDANGERMENT

As relevant to the facts of this case, a person commits the offense of "child endangerment" when she (1) intentionally, knowingly, recklessly, or with criminal negligence, (2) by act or omission, (3) engages in conduct that places a child younger than fifteen years of age in imminent danger of death, bodily injury, or physical or mental impairment. *See* TEX. PENAL CODE ANN. § 22.041 (West 2011). Because every "child younger than fifteen years" is an "individual" and an act placing a child "in imminent danger of death" can cause "death," the offenses of (1) reckless child

endangerment (recklessly engaging in conduct that places a child younger than fifteen years of age in imminent danger of death) and (2) criminally negligent child endangerment (engaging in criminally negligent conduct that places a child younger than fifteen years of age in imminent danger of death) are "established by proof of the same ... facts required to establish the offense of manslaughter" (recklessly causing the death of an individual). *See* TEX. CODE CRIM. PROC. ANN. art. 37.09(1) (West 2006). Furthermore, recklessly causing the death of an individual (manslaughter) "differs ... only in the respect that a less serious injury or risk of injury to the same person ... suffices to establish" injury to a child by either (1) reckless engagement in conduct that places a child younger than fifteen years of age in imminent danger of death or (2) engagement in criminally negligent conduct that places a child younger than fifteen years of age in imminent danger of death. *See id.* at art. 37.09(2). Therefore, as charged and prosecuted in this case, reckless or criminally negligent child endangerment was a lesser-included offense to the offense of manslaughter.

The State's theory of prosecution specifically included the possibility of conviction based on reckless conduct. During *voir dire*, the prosecuting attorney repeatedly emphasized that a felony-murder conviction could be based upon reckless or criminally negligent conduct. At one point the prosecutor stated, "[i]n this particular statute [section 19.02(b)(3) felony-murder] you do not have to knowingly or intentionally cause the death of an individual. You have to knowingly or intentionally or *recklessly* engage in one of these other felony offenses, injuring a child or endangering a child." (Emphasis added). The State went on to explain, "[t]he State has alleged in this case that the defendant injured the child—either intentionally or knowingly or *recklessly* injured the child or intentionally or knowingly or *recklessly* endangered the child." (Emphasis added). Finally, during closing statements, the State argued, "[i]f you think that she's guilty of Recklessly Causing Serious Bodily Injury to a Child, and then an act clearly dangerous to human life, that's felony murder."

Here, neither the indictment, the arguments of counsel, nor the charge of the court limited the jury's consideration to conduct that was intentional or knowing, thereby permitting a conviction based upon the commission of injury to a child or child endangerment by reckless or criminally negligent conduct. Therefore, as charged and prosecuted, the conviction is potentially based upon a reckless or criminally negligent act (or acts), that caused Clara's death, to be used to bootstrap what would otherwise be a manslaughter offense into a section 19.02(b)(3) felony-murder. To permit this would be to allow every reckless or criminally negligent act resulting in the death a child to be prosecuted as a murder. Here, the precedent felonious acts and the conduct causing the homicide were not only one and the same, they would be virtually indistinguishable from a manslaughter conviction based on the same acts. To allow a felony-murder prosecution under these facts would be to completely circumvent the legislative intent to exclude manslaughter as a qualifying precedent felony. To hold otherwise would be to render the felony-murder rule hopelessly incongruent. Viewing the record as a whole, we find the evidence could have supported a finding of injury to a child or child endangerment by reckless or criminally negligent conduct—offenses which are lesser-included offenses to the offense of manslaughter. Accordingly, because the jury charge permitted a conviction for the offense of murder on a theory not supported by the law, the verdict cannot

stand. Issues one, two, and six are sustained.

PROPER REMEDY

■ In *Bowen v. State*, 374 S.W.3d 427 (Tex. Crim. App. 2012), the Court of Criminal Appeals held that if an appellate court concludes the evidence supporting a conviction is legally insufficient, the court is not necessarily limited to ordering an acquittal, but may instead reform the judgment to reflect a conviction as to the lesser-included offense and remand the case to the trial court for a new punishment hearing. *Bowen*, 374 S.W.3d at 431-32. The Court subsequently held that where there is proof beyond a reasonable doubt as to all elements of a lesser-included offense, an appellate court not only *may*—but *should*—render a judgment of conviction as to that lesser-included offense. *Britain*, 412 S.W.3d at 521. The Court further clarified an intermediate appellate court's responsibility to reform a judgment and remand for a new punishment hearing in *Thornton v. State*, 425 S.W.3d 289 (Tex. Crim. App. 2014), wherein it said:

> after a court of appeals has found the evidence insufficient to support an appellant's conviction for a greater-included offense, in deciding whether to reform the judgment to reflect a conviction for a lesser-included offense, that court must answer two questions: 1) in the course of convicting the appellant of the greater offense, must the [fact finder] have necessarily found every element necessary to convict the appellant of the lesser-included offense; and 2) conducting an evidentiary sufficiency analysis as though the appellant had been convicted of the lesser-included offense at trial, is there sufficient evidence to support a conviction for that offense? If the answer to either of these questions is no, the court of appeals is not authorized to reform the

judgment. But if the answer to both are yes, the court is authorized—indeed required—to avoid the "unjust" result of an outright acquittal by reforming the judgment to reflect a conviction for the lesser-included offense. *Id.* at 300. Finally, in *Arteaga v. State*, No. PD-1648-15, 521 S.W.3d 329, 339-40, 2017 WL 2457432 at *8, 2017 Tex. Crim. App. LEXIS 533 at *23 (Tex. Crim. App. June 7, 2017), the Court further expanded the application of *Bowen* and its progeny to cases involving jury-charge error.

Therefore, because the reversible error in this case is a form of jury-charge error, we deem it necessary to address the application of *Bowen* to the facts of this case. In that analysis, if we were to answer the two questions posited in *Thornton* to the facts of this case, one might reach the conclusion that we are not only authorized, but "indeed required," to reform the judgment to a judgment of conviction as to the lesser-included offense of manslaughter because: (1) in the course of convicting Appellant of the greater offense of murder, the jury must have necessarily found every element necessary to convict Appellant of the lesser-included offense of manslaughter; and (2) in conducting an evidentiary sufficiency analysis as though Appellant had been convicted of the lesser-included offense at trial, there is sufficient evidence to support a conviction for that offense. *See Thornton*, 425 S.W.3d at 300. To do so, however, would be to afford Appellant an "unjust windfall," which *Bowen* sought to avoid.

In *Arteaga*, as in this case, the trial court failed to properly instruct the jury regarding the "law applicable to the case" by improperly defining an essential element of the offense as charged. The erroneous charge in *Arteaga* dealt with an aggravating issue, presented as a special issue to be considered only if the jury

found the defendant guilty of one or more of the submitted sexual assault offenses. There, the jury's affirmative answer to that special issue enhanced the range of punishment for the offense of sexual assault from a second degree felony to a first degree felony. After finding the error to be egregious, the Court proceeded to find that application of the *Bowen* line of cases was warranted under the facts of the case. Because the jury had necessarily found the defendant guilty of the second degree felony offense of sexual assault, the Court concluded the proper remedy was to reform judgment to reflect a conviction as to that offense and to remand the matter to the trial court for a new punishment hearing. Here, however, the erroneous charge deals with the merits of the offense itself—not the range of punishment. The erroneous charge in this case permitted jurors to find Appellant guilty of the offense of murder based upon both a theory authorized by law and a theory not authorized by law. This difference sufficiently distinguishes the opinion in *Arteaga* from the facts of this case and renders application of *Bowen* and its progeny inappropriate.

In this case, the verdict rendered by the jury was a general one—meaning, we are unable to determine whether some or all of the jurors believed Appellant was guilty of murder based upon a theory authorized by law (intentional or knowing conduct) or upon a theory not authorized by law (reckless or criminally negligent conduct). Because the record supports both possibilities, the appropriate remedy is not to acquit or to reform the judgment of conviction. The appropriate remedy is to reverse and remand for a new trial. *Stromberg v. California*, 283 U.S. 359, 367-70, 51 S.Ct. 532, 75 L.Ed. 1117 (1931) (holding remand for a new trial to be the appropriate remedy when conviction was based on a general jury verdict encompassing both a constitutional and an unconstitutional theory

of conviction). Therefore, we believe the appropriate remedy in this case is to reverse the conviction and remand this proceeding to the trial court for a new trial. Because we have concluded that both an acquittal and a reformed judgment would be inappropriate and that the proper remedy would be to reverse and remand for a new trial, in the interest of justice, we will address Appellant's remaining issues to determine if they would afford her any greater relief.

ISSUE THREE—ERRONEOUS ADMISSION OF EXTRANEOUS OFFENSES

 By her third issue, Appellant contends the trial court abused its discretion by admitting what she characterized as a "grossly excessive number" of extraneous offenses. Specifically, her complaint concerns the admission of hair follicle results showing the presence of diphenhydramine in fourteen other infants who were in her care at or around the time of Clara's death. Appellant's contention is that, while the introduction of hair follicle results from some of the fourteen infants could have been probative, and therefore admissible, the danger of unfair prejudice and undue delay substantially outweighed the probative value of introducing the test results from all fourteen infants. The State posits that, pursuant to Rule 404(b) of the Texas Rules of Evidence, the evidence was admissible for purposes other than character conformity, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

 We review the trial court's decision to exclude or admit evidence based on an abuse of discretion standard. *See Montgomery v. State*, 810 S.W.2d 372, 379 (Tex. Crim. App. 1990) (en banc) (citing *Marras v. State*, 741 S.W.2d 395, 404 (Tex. Crim. App. 1987) (en banc)). The test for

abuse of discretion is a question of whether the trial court acted without reference to any guiding rules and principles. *See id.* at 380. We will uphold the trial court's ruling "so long as the result is not reached in an arbitrary or capricious manner" and is within the "zone of reasonable disagreement." *See id.* A trial court's decision to admit extraneous-offense evidence is generally within the zone of reasonable disagreement if the evidence shows that (1) the extraneous transaction is relevant to a material, non-propensity issue and (2) the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading of the jury. *De La Paz v. State,* 279 S.W.3d 336, 344 (Tex. Crim. App. 2009). Further, we will sustain the trial court's decision if that decision is correct on any theory of law applicable to the case. *Romero v. State,* 800 S.W.2d 539, 543 (Tex. Crim. App. 1990) (en banc). Rule 404(b) excludes only that evidence that is offered solely for the purpose of proving bad character and hence conduct in conformity with that bad character. *De La Paz,* 279 S.W.3d at 343.

The State contends the introduction of the hair follicle results from all fourteen infants was probative of the issue concerning whether Clara was given diphenhydramine while being cared for at Appellant's daycare center as opposed to when she was in the care of her parents or others because it made it statistically more probable that she was given the drug as part of a designed plan to sedate all the infants in Appellant's care during naptime. *See Jones v. State,* 716 S.W.2d 142, 158 (Tex. App.—Austin 1986, pet. ref'd) (evidence of similar medical episodes involving five different patients admitted for the purpose of showing motive, intent, design, or scheme in the murder prosecution of a licensed vocational nurse accused of injecting the victim with succinylcholine). The State argues that the pattern of positive test results showing diphenhydramine in all fourteen infants tends to negate any explanation that the results were either accidental or coincidental or were due to anything other than a deliberate plan to sedate the infants under Appellant's care. Appellant concedes the hair follicle results were probative and admissible; however, she contends the "sheer magnitude" of offenses admitted was unfairly prejudicial. *See Pawlak v. State,* 420 S.W.3d 807, 811 (Tex. Crim. App. 2013) (citing *Mosley v. State,* 983 S.W.2d 249, 263 (Tex. Crim. App. 1998)) for the proposition that ("admissible prejudicial evidence can become *unfairly* prejudicial by its sheer volume"). Relying on *Pawlak* and *Casey v. State,* 215 S.W.3d 870, 883 (Tex. Crim. App. 2007), she argues that the body of extraneous-offense evidence admitted was unfairly prejudicial because it tended to have an adverse effect upon her beyond the fact or issue justifying its admission. She posits that the purpose for allowing the admission of the extraneous offenses could have been accomplished by offering the same evidence, but limiting the number of occurrences to five or fewer children.

Here, the question of who provided Clara diphenhydramine was a significant, contested issue and it would have remained so regardless of whether the State offered one extraneous offense or fourteen. The particular extraneous offenses presented were not overwhelmingly emotional because in each instance (other than Clara's) the infant survived with no known adverse effects. We agree with the State that the evidence had relevance outside its tendency to show character conformity and its probative value was not substantially outweighed by the danger of any unfair prejudice. Accordingly, we find the trial court did not err in admitting the com-

plained-of extraneous-offense evidence. Issue three is overruled.

ISSUE FOUR—FAIR AND IMPARTIAL JUDGE

Due process requires the right to a trial before a neutral and detached tribunal and every defendant is entitled to a fair and impartial judge. *See Arizona v. Fulminante,* 499 U.S. 279, 309, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991); *Grado v. State,* 445 S.W.3d 736, 739 (Tex. Crim. App. 2014); *Brumit v. State,* 206 S.W.3d 639, 645 (Tex. Crim. App. 2006). While the appearance of denial of that right is a serious matter for this court to consider, absent a clear showing of bias, we must presume a trial judge is neutral and detached. *Tapia v. State,* 462 S.W.3d 29, 44 (Tex. Crim. App. 2015).

Here, Appellant contends she was denied that fundamental right based on the trial judge's "repeated and inappropriate commentary." Appellant focuses primarily on the judge's comments relating to defense counsel's repeated objections to the extraneous-offense evidence and the limiting instruction read to the jury. According to Appellant's theory, the judge's comments served to indirectly inform the jury that he thought counsel's objections were a meaningless ritual, bearing little or no relevance to the issues before the jury. Specifically, Appellant contends the judge's comments were inappropriate when, either prior to or after giving a limiting instruction as to an extraneous-offense witness, he said:

- "Ladies and gentlemen, there is going to be a whole series of witnesses to which this instruction is going to apply, and I will be reading that instruction to you for every one of them, so you can get used to it." (Statement made prior to the extraneous-offense testimony of witness Johnson.)

- "Ladies and gentlemen, I know that you-all are getting sick to death of hearing all this, but procedurally and legally this is the way we have to do it." (Statement made immediately following defense counsel's objections concerning the extraneous-offense testimony to be given by witness Edison.)

- "Ladies and gentlemen, you-all ought to have this memorized by now." (Statement made immediately following defense counsel's objections concerning the extraneous-offense testimony to be given by witness Morefield.)

- "Here we go, ladies and gentlemen." (Statement made immediately following defense counsel's objections concerning the extraneous-offense testimony to be given by witness Mathis.)

- "They say that repetition is not permanently damaging. We're going to test that hypothesis." (Statement made prior to the extraneous-offense testimony of witness Sibley.)

- "They are overruled, and I don't think anybody would be upset if you had forgotten." (Statement made immediately following defense counsel's apology for forgetting to make an objection concerning the extraneous-offense testimony of witness Sibley.)

- "Guess what I'm going to say, ladies and gentlemen." (Statement made prior to the giving of the extraneous-offense instruction concerning the testimony of witness Sibley.)

- "Ladies and gentlemen, I think we only have two more of these to go through today." (Statement made prior to the giving of the extraneous-offense testimony of witness Ivy.)

- "We have to go through this little deal, ma'am, so just bear with us." (Statement made immediately follow-

ing defense counsel's objections concerning the extraneous-offense testimony to be given by witness Ivy.)

- "One more time, ladies and gentlemen." (Statement made immediately prior to the calling of extraneous-offense witness Felton.)
- "You just barely got started, not that anybody doesn't know what you're going to say." (Statement made at bench conference immediately prior to defense counsel's objections concerning the extraneous-offense testimony of witness Broome.)
- "Now you know what I am going to say." (Statement made immediately following defense counsel's objections concerning the extraneous-offense testimony to be given by witness Broome.)
- "Ladies and gentlemen, I thought we were through with this, but here we go one more time." (Statement made immediately following defense counsel's objections concerning the extraneous-offense testimony to be given by witness Filz.)

Appellant further complains about other casual comments made to the jury which she construes as being jovial and inappropriate to the "solemnity and dignity" of the proceedings. In response, the State contends (1) Appellant waived any complaint concerning the comments of the trial judge by failing to make a timely objection as to those complaints, (2) the statements fell within the zone of appropriate trial judge/jury interactions, and (3) the error, if any, was harmless.

▮▮▮ As expressed by the Texas Court of Criminal Appeals, "too much caution cannot be exercised in the effort to avoid impressing the jury with the idea that the court entertains any impressions of the case which he wishes them to know, and putting before them matters which

should not enter into or affect their deliberations ... should in all cases be avoided." *Blue v. State*, 41 S.W.3d 129, 131 (Tex. Crim. App. 2000). Juries tend to give the statements and conduct of the trial judge "special and peculiar weight." *Id.* Because of this heightened influence on a jury, the law contemplates that every trial judge shall maintain an attitude of complete impartiality throughout the trial by avoiding statements or conduct that might be viewed by the jury as shedding light on the judge's view of the weight of the evidence or the merits of the issues involved. *Id.*

Here, it is unquestionable that the trial judge could have done a "better job" of maintaining the independence, integrity, and impartiality of the judiciary. That being said, it is equally unquestionable that such a statement could be made of almost every jurist in every trial. Judges are not autotronic dispensers of justice. They live in a real world that necessitates that they interact with jurors—in appropriate ways. Drawing that line between appropriate and inappropriate interaction is often times a difficult line to clearly delineate. In some ways, it is like the proverbial definition of obscenity given by the Honorable Potter Stewart in his concurring opinion in *Jacobellis v. Ohio*, 378 U.S. 184, 197, 84 S.Ct. 1676, 12 L.Ed. 2d 793 (1964), wherein he said: "I know it when I see it."

In an emotional and contentious trial such as this, it is especially important that a trial judge be sensitive to the interplay between the court and the jury. Having considered the questioned comments in the overall context of this particular proceeding, we cannot say that those comments crossed that ethereal line. Appellant's fourth issue is overruled.

ISSUE FIVE—CHARGE ERROR

By her fifth issue, Appellant contends the guilt/innocence jury charge was erro-

neous in several respects: (1) the felony-murder application paragraph failed to instruct the jury regarding the elements of the precedent felonies alleged, (2) the definition of "reckless" was overly broad because it was not limited to the result-of-conduct portion of the statutory definition, and (3) the jury was not given a causation instruction. As previously discussed, because Appellant failed to object to any of these alleged errors, she maintains they caused her egregious harm. *See Almanza v. State*, 686 S.W.2d 157, 171 (Tex.Crim. App.1984). In an *Almanza* analysis of charge error, the first step is to determine whether there was error in the charge. If there was error and an appellant objected to that error at trial, reversal is required if the error is calculated to injure the rights of the appellant, which means that there was "some harm." If the error was not objected to, it must be "fundamental," and reversal is required only if that error was so egregious and created such a risk of harm that it can be said the appellant did not receive a fair and impartial trial. *Id.*

Errors that result in egregious harm are those kinds of errors that affect " 'the very basis of the case,' 'deprive the defendant of a valuable right,' or 'vitally affect a defensive theory.' " *See Warner v. State,* 245 S.W.3d 458, 462 (Tex. Crim. App. 2008); *Hutch v. State*, 922 S.W.2d 166, 171 (Tex. Crim. App. 1996) (quoting *Almanza*, 686 S.W.2d at 172). *See also Chaney*, 314 S.W.3d at 568. In order to determine the actual degree of harm, an appellate court must examine "the entire jury charge, the state of the evidence, including the contested issues and weight of the probative evidence, the argument of counsel, and any other relevant information revealed by the record of the trial as a whole." *Almanza*, 686 S.W.2d at 171. An egregious harm analysis "is a fact specific one which should be done on a case-by-

case basis." *Gelinas v. State*, 398 S.W.3d 703, 710 (Tex. Crim. App. 2013).

Here, as it is in every case, it is incumbent upon a trial court to "distinctly" instruct the jury on the law applicable to every issue raised by the evidence. *See* Tex. Code Crim. Proc. Ann. art. 36.14 (West 2007). "Because the charge is the instrument by which the jury convicts, [it] must contain an accurate statement of the law and must set out all the essential elements of the offense." *Vasquez v. State*, 389 S.W.3d 361, 366 (Tex. Crim. App. 2012) (quoting *Dinkins v. State*, 894 S.W.2d 330, 339 (Tex. Crim. App. 1995)). Thus, the charge of the court must communicate "each statutory definition that affects the meaning of an element of the offense. . . ." *Villarreal v. State*, 286 S.W.3d 321, 329 (Tex. Crim. App. 2009) (quoting G. Dix & R. Dawson, Texas Practice: Criminal Practice and Procedure § 36.11 at 562 (2d ed. 2001)).

(1) Failure To Instruct the Jury On the Elements of the Precedent Felonies

Appellant contends the trial court committed egregious error by failing to include the elements of "injury to a child" or "child endangerment" in the application paragraph of the court's charge. Relying on *Riley v. State*, 447 S.W.3d 918, 922 (Tex. App.—Texarkana 2014, no pet.), Appellant maintains, and we agree, the elements of the precedent felony offenses are necessary elements of the primary offense of felony-murder. That does not mean, however, that the trial court committed egregious error by failing to include the specific elements of the precedent felony offenses *in the application paragraph* of the court's charge when those elements were clearly spelled-out in the abstract definitions section of the charge.

The Texas Court of Criminal Appeals has held that the application paragraph of

an offense committed "in the course of" committing an underlying aggravating offense need not set out the essential elements of that underlying offense, where those elements are otherwise properly set out in the charge of the court. *Demouchette v. State*, 731 S.W.2d 75, 80 (Tex. Crim. App. 1986). Here, the trial court specifically set out the elements of "injury to a child" and "child endangerment" in the definitions section of the charge. Although the better practice would be to specifically include the specific elements of the underlying felony or felonies in the application paragraph of the court's charge in a felony-murder prosecution, under the facts of this case, we cannot say the failure to do so caused Appellant egregious harm.

(2) OVERLY BROAD DEFINITION OF RECKLESS

■■ Because the applicable mental state of a result-oriented offense relates to the "result of the conduct" rather than the "nature of the conduct," a charge containing the full statutory definition of the applicable *mens rea* is erroneous. *Cook*, 884 S.W.2d at 491; *Anaya*, 381 S.W.3d at 664. Here, Appellant contends felony-murder is a "result-oriented offense," and therefore, the full statutory definition of "reckless" given by the trial court was inapplicable. Citing *Price v. State*, 457 S.W.3d 437, 441 (Tex. Crim. App. 2015) (finding a "trial court errs when it fails to limit the language in regard to the applicable culpable mental states to the appropriate conduct element") and *Cook*, 884 S.W.2d at 491 (holding that a trial court errs by failing to "limit the definitions of the culpable mental states as they relate to the conduct elements involved in the particular offense"), she concludes the trial court erred by failing to limit the definition of reckless to "[a] person acts recklessly, or is reck-

less, with respect to the result of his conduct when he is aware of but consciously disregards a substantial and unjustifiable risk that the result will occur." Stated differently, she maintains the trial court erred by submitting a definition of reckless that included the "circumstances surrounding the conduct" portion of the statutory definition (i.e., that portion of the statutory definition stating "with respect to the circumstances surrounding his conduct" and "that the circumstances exist"). Without any substantive analysis of the issue, the State simply maintains the argument is "without merit." We disagree.

In *Britain*, 412 S.W.3d at 520, the Texas Court of Criminal Appeals implicitly approved a result-oriented definition of reckless as follows: "[a] person acts recklessly ... when he is aware of but consciously disregards a substantial and unjustifiable risk.... The risk must be of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint." This definition conspicuously fails to include the "circumstances surrounding the conduct" language objected to by Appellant. Because the charge of the court in this case failed to properly limit the definition of reckless to a result-oriented instruction, we conclude the trial court erred.[12]

Based on our disposition of issues one, two, and six, we need not determine whether this error was egregious. We note, however, that this portion of issue five only serves to emphasize the importance of the question heretofore discussed with respect to those issues. By excluding manslaughter (recklessly causing the death of an individual) as the result-orient-

---

12. Although not similarly attacked by Appellant, the same logic would apply to the defini-
tions of intentional, knowing, or criminally negligent conduct.

ed, underlying offense in a felony-murder prosecution, the Texas Legislature likewise intended to exclude the result-oriented offenses of reckless or criminally negligent injury to a child and reckless or criminally negligent endangerment of a child, causing the death of that child, as potential underlying felony offenses for the purpose of section 19.02(b)(3) of the Texas Penal Code.

(3) FAILURE TO GIVE A CAUSATION INSTRUCTION.

■ Finally, Appellant contends she was egregiously harmed by the failure of the court's charge to instruct the jury regarding causation. The State maintains that, while not specifically containing a "but for" definition, the court's charge did require the statutorily required causation element.

■ As acknowledged by the State's brief, the Texas Legislature chose to narrow the issue of causation in a felony-murder prosecution in two distinct ways: (1) the statute requires proof of the commission or attempted commission of an act "clearly dangerous to human life" and (2) it requires that act to be the very cause of death. *Lawson*, 64 S.W.3d at 397-98.

Here, in two separate paragraphs, the trial court outlined the elements of the offense of murder, according to the State's theory of the case. In each instance, the charge of the court clearly spelled out the requirement that the jury find that Appellant "did then and there commit or attempt to commit an act clearly dangerous to human life ... which caused the death of [the victim]." The charge, as submitted, adequately instructed the jury regarding the statutory requisites of causation. Accordingly, the trial court did not err by failing to include an additional instruction regarding causation. Issue five is overruled.

CONCLUSION

Having concluded that the jury charge presented in this case authorized conviction for the offense of murder on a theory not supported by the law, the verdict cannot stand. Consequently, we reverse the judgment of the trial court and remand the cause for a new trial.