

In The

# Court of Appeals

## Seventh District of Texas at Amarillo

_____

No. 07-15-00267-CR

_____

MARIAN FRASER, APPELLANT

V.

STATE OF TEXAS, APPELLEE

On Appeal from the 19th District Court
McLennan County, Texas
Trial Court No. 2014-158-C1; Honorable Ralph T. Strother, Presiding

December 20, 2019

## OPINION ON REMAND

Before QUINN, C.J., and PIRTLE and PARKER, JJ.

Appellant, Marian Fraser, was convicted of the offense of murder[1] and sentenced

to fifty years confinement and was assessed a $10,000 fine. On direct appeal, this court

---

[1] TEX. PENAL CODE ANN. § 19.02(b)(3) (West 2019). An offense under this section is commonly referred to as a "felony murder" due to the requirement that the defendant commit or attempt to commit an underlying felony offense, other than manslaughter. An offense under this section is a felony of the first degree. TEX. PENAL CODE ANN. § 19.02 (c).

found that because her conviction was potentially based on the underlying felony offenses of reckless or criminally negligent injury to a child, or reckless or criminally negligent child endangerment, theories we believed would not support a felony murder conviction, her conviction was reversed. *See Fraser v. State*, 523 S.W.3d 320 (Tex. App.—Amarillo 2017), *rev'd*, 583 S.W.3d 564 (Tex. Crim. App. 2019). On the State's *Petition for Review*, the Court of Criminal Appeals reversed the judgment of this court and remanded the matter in order that we might address Appellant's claim that the definition of "reckless" contained in the *Charge of the Court* was overly broad.[2] *See Fraser v. State,* 583 S.W.3d 564, 571, n.41 (Tex. Crim. App. 2019).

On remand, we find the trial court erred in its charge to the jury. We further find that, under the facts of this case, such error was egregious in that it (1) deprived Appellant of her right to a fair trial and (2) vitally affected a defensive theory. Accordingly, for the reasons that follow, we reverse and remand.

### BACKGROUND

The background facts of this case are well-stated in our original opinion and they are further discussed in each of the four separate opinions issued by the Court of Criminal Appeals. Accordingly, we refer the reader to the opinions cited above for a full discussion of the underlying facts. Suffice it to say that, in an unfortunate series of events, a four-month old infant died while in Appellant's care. The medical examiner's conclusion as to the cause of death was that the infant died as the result of being given a toxic amount of

---

[2] Specifically, Appellant's fifth issue was "[t]he jury charge contained several errors that caused [Appellant] to suffer egregious harm."

diphenhydramine, the active ingredient in Benadryl. Based on those facts, the State indicted Appellant for the first-degree felony offense of murder, pursuant to section 19.02(b)(3) of the Texas Penal Code, relying, in part, on the theory that Appellant committed the underlying felony offenses of reckless or criminally negligent injury to a child[3] or reckless or criminally negligent child endangerment;[4] and, in the course of and in furtherance of the commission of one of those offenses, she committed an act clearly dangerous to human life, namely, administering diphenhydramine to the victim or causing the victim to ingest diphenhydramine, that caused the infant's death. Based on the remand from the Court of Criminal Appeals, we will limit our analysis to the question of whether the trial court's definition of reckless (and criminally negligent conduct) was error, and, if so, whether that error was egregious.

### APPLICABLE LAW—CHARGE ERROR

Article 36.14 of the Texas Code of Criminal Procedure mandates that the trial court "*shall deliver to the jury* . . . a written charge *distinctly setting forth the law applicable to the case* . . . ." TEX. CODE CRIM. PROC. ANN. art. 36.14 (West 2007). (Emphasis added).

---

[3] TEX. PENAL CODE ANN. § 22.04(a) (West 2019). A person commits the offense of *injury to a child* if she intentionally, knowingly, recklessly, or by criminal negligence causes bodily injury or serious bodily injury to a child fourteen years old or younger. Although the indictment did not specify the State's theory as to how Appellant committed the offense of injury to a child, the *Charge of the Court* at the guilt or innocence phase of trial included all four culpable mental states. An offense under this provision can range from a first degree felony to a state jail felony depending on the culpable mental state of the actor and the nature and degree of the victim's injuries. TEX. PENAL CODE ANN. § 22.04(e), (f), and (g).

[4] TEX. PENAL CODE ANN. § 22.041(c) (West 2019). A person commits the offense of child endangerment if she intentionally, knowingly, recklessly, or by criminal negligence, engages in conduct that places a child younger than fifteen years old in imminent danger of death, bodily injury, or physical or mental impairment. Although the indictment did not specify the State's theory as to how Appellant committed the offense of child endangerment, the *Charge of the Court* at the guilt or innocence phase of trial included all four culpable mental states. An offense under this provision is a state jail felony. TEX. PENAL CODE ANN. § 22.041(f).

A proper definition of statutorily defined terms applicable to the prosecution is considered to be "law applicable to the case." "The purpose of the jury charge is to inform the jury of the applicable law and guide them in its application to the case." *Beltran De La Torre v. State*, 583 S.W.3d 613, 617 (Tex. Crim. App. 2019) (quoting *Hutch v. State*, 922 S.W.2d 166, 170 (Tex. Crim. App. 1996)). Therefore, a proper charge consists of an abstract statement of the law applicable to the case and such application paragraph or paragraphs as are necessary to apply that law to the facts. *Ramirez v. State*, 336 S.W.3d 846, 851 (Tex. App.—Amarillo 2011, pet. ref'd). The abstract paragraph of a jury charge serves as a glossary to help the jury understand the meaning of concepts and terms used in the application paragraph of the charge. *Arteaga v. State*, 521 S.W.3d 329, 338 (Tex. Crim. App. 2017). The failure to give an abstract instruction is reversible error when such an instruction is necessary to correct or complete the jury's understanding of concepts or terms in the application part of the charge. *Malik v. State*, 953 S.W.2d 234, 235 (Tex. Crim. App. 1997).

Furthermore, "[a] trial judge must maintain neutrality in providing such information and guidance." *Beltran De La Torre*, 583 S.W.2d at 617 (citing *Brown v. State*, 122 S.W.2d 794, 798 (Tex. Crim. App. 2003)). Accordingly, the jury charge should avoid any allusion to a particular fact in evidence, "as the jury might construe this as judicial endorsement or imprimatur." *Id.* Furthermore, an instruction is improper if it "impermissibly guide[s]" a jury's consideration of the evidence and "improperly focuses the jury" on certain evidence because such an instruction would amount to an impermissible comment on the weight of the evidence. *Brown*, 122 S.W.2d at 802. To accomplish these purposes, article 36.14 provides that a jury charge: (1) must be in

4

writing; (2) must "distinctly set[] forth the law applicable to the case"; (3) cannot "express[] any opinion as to the weight of the evidence"; (4) may "not sum[] up the testimony"; and (5) cannot "discuss[] the facts or us[e] any argument in [the] charge calculated to arouse the sympathy or excite the passions of the jury." TEX. CODE CRIM. PROC. ANN. art. 36.14.

Appellate review of claimed jury-charge error involves a two-step process. *See Cortez v. State*, 469 S.W.3d 593, 598 (Tex. Crim. App. 2015). *See also Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985). A reviewing court must initially determine whether charge error occurred. *Price v. State*, 457 S.W.3d 437, 440 (Tex. Crim. App. 2015). If an appellate court finds charge error, the next step requires the reviewing court to analyze that error for harm. *Kirsch v. State*, 357 S.W.3d 645, 649 (Tex. Crim. App. 2012).

Charge error requires reversal when a proper objection has been made and a reviewing court finds "some harm," i.e., error that is calculated to injure the rights of the defendant. *Barrios v. State*, 283 S.W.3d 348, 350 (Tex. Crim. App. 2009). Where, as here, the alleged error was not preserved by objection, Appellant can prevail only if she was egregiously harmed by an erroneous charge. *Arteaga*, 521 S.W.3d at 338. Jury charge error is egregious if it affects the very basis of the case, deprives the defendant of a valuable right, or vitally affects a defensive theory. *Id.* Egregious harm is a "high and difficult standard which must be borne out by the trial record." *Reeves v. State*, 420 S.W.3d 812, 816 (Tex. Crim. App. 2013).

When reviewing harm resulting from charge error, an appellate court must determine harm in light of (1) the jury instructions, (2) the state of the evidence, (3) the

arguments of counsel, and (4) any other relevant information revealed by the record of the trial as a whole. *See Anaya v. State*, 381 S.W.3d 660, 665 (Tex. App.—Amarillo 2012, pet. ref'd) (citing *Almanza*, 686 S.W.2d at 174). Also, there is no burden of proof or persuasion in a harm analysis conducted under *Almanza*. *See Anaya*, 381 S.W.3d at 665.

### APPLICABLE LAW—ELEMENTS OF THE OFFENSE AND STATUTORY DEFINITIONS

### (1) FELONY MURDER

According to the relevant theory of the State's case, the prosecution was required to establish the following elements:

(1) the death of an individual;
(2) caused by an act;
(3) that was clearly dangerous to human life;
(4) committed in the course of and in furtherance of reckless or criminally negligent injury to a child or reckless or criminally negligent child endangerment.

*See* TEX. PENAL CODE ANN. § 19.02(b)(3).

### (2) INJURY TO A CHILD

As to the underlying felony offense of reckless or criminally negligent injury to a child, the prosecution was required to establish the following elements:

(1) Appellant;
(2) recklessly or by criminal negligence;
(3) caused bodily injury;
(4) to the victim; and
(5) the victim was fourteen years old or younger.

*See* TEX. PENAL CODE ANN. § 22.04(a) (West 2019).

6

**(3) CHILD ENDANGERMENT**

As to the underlying felony offense of reckless or criminally negligent child endangerment, the prosecution was required to establish the following elements:

(1) Appellant;
(2) recklessly or by criminal negligence;
(3) engaged in conduct;
(4) that placed a child in imminent danger of death, bodily injury, or physical or mental impairment; and,
(5) that child was younger than fifteen years of age.

*See* TEX. PENAL CODE ANN. § 22.041(c).

**(4) RECKLESS CONDUCT**

Section 6.03(c) of the Texas Penal Code defines "recklessly" as follows:

[a] person acts recklessly, or is reckless, with respect to the circumstances surrounding his conduct *or the result of his conduct* when he is aware of but consciously disregards a substantial and unjustifiable risk that the circumstances exist *or the result will occur*. The risk must be of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint.

TEX. PENAL CODE ANN. § 6.03(c). (Emphasis added).

**ANALYSIS—CHARGE ERROR**

In Texas, there are three statutorily-defined ways to commit the first-degree felony offense of murder. First, a person commits the offense of murder if she *intentionally* or *knowingly causes the death* of an individual. *See* TEX. PENAL CODE ANN. § 19.02(b)(1). Secondly, a person commits the offense of murder if she *intends* to cause serious bodily injury and commits an act clearly dangerous to human life that *causes the death* of an individual. TEX. PENAL CODE ANN. § 19.02(b)(2). Thirdly, a person commits the offense of

7

murder if she commits or attempts to commit a felony, other than manslaughter,[5] and in the course of and in furtherance of the commission or attempt, or in immediate flight from the commission or attempt, she commits or attempts to commit an act clearly dangerous to human life that *causes the death* of an individual.[6]    TEX. PENAL CODE ANN. § 19.02(b)(3).

In each of these three subparts of section 19.02(b), the statutory focus and, therefore, the gravamen of the offense of murder is *causing the death* of an individual. Because of this statutory definition, murder is generally described as a "result-of-conduct" or "result-oriented" offense, meaning the proscribed conduct must have *caused the death* of the victim, as opposed to simply engaging in conduct that *results in the death* of the victim.  *Schroeder v. State*, 123 S.W.3d 398, 400 (Tex. Crim. App. 2003); *Cook v. State*, 884 S.W.2d 485, 490 (Tex. Crim. App. 1994); *Anaya*, 381 S.W.3d at 664; *Chaney v. State*, 314 S.W.3d 561, 568-72 (Tex. App.—Amarillo 2010, pet. ref'd).  In the context of a felony murder, this means the fact finder must determine that the "act clearly dangerous to human life" must have "cause[d] the death" of the victim.   This is an often overlooked subtle, but critical, distinction because the court's charge must tailor the definition of the

---

[5] A person commits the offense of manslaughter if she recklessly causes the death of an individual. TEX. PENAL CODE ANN. § 19.04(a) (West 2019).  An offense under this section is a felony of the second degree.  *Id.* at 19.04(b).

[6] "[T]he felony murder statute makes clear that the 'act clearly dangerous to human life' must be the cause of the death of the victim."  *See Rodriguez v. State*, 454 S.W.3d 503, 507 (Tex. Crim. App. 2014) (finding no "act" in the starvation of a child, reversing a felony murder conviction, and reforming the judgment to reflect a conviction for injury to a child).

culpable mental state to the conduct elements of the particular offense and the failure to do so is error. *Price*, 457 S.W.3d at 441.

Here, Appellant contends the trial court's definition of reckless was overly broad because it did not distinguish between "result-of-conduct" offenses and "nature-of-conduct" offenses and it did not properly tailor the definition of reckless to the facts of this case, and that by failing to do so, the trial court committed error.

In this case, by way of contrast to the statutory definition, the *Charge of the Court* defined the culpable mental state of *reckless* as follows:

> [a] person acts recklessly, or is reckless, with respect to circumstances surrounding his conduct when he is aware of but consciously disregards a substantial and unjustifiable risk that the circumstances exist. The risk must be of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint.

As one can see, when compared to the statutory definition, the court's definition of reckless omits the phrases "or the result of his conduct" and "or the result will occur" following the preceding phrase regarding the circumstances surrounding the conduct in question. By so limiting the definition of reckless, the *Charge of the Court* allowed a conviction based simply on a finding of reckless conduct, regardless of whether that conduct actually caused the death in question. Because the *Charge of the Court* failed to properly limit the *mens rea* definition of "reckless" to a result-oriented offense, it was an erroneous definition for purposes of the offense of felony murder. As previously stated,

9

because Appellant did not make this objection known to the trial court below, we must review this error for egregious harm. *See Almanza*, 686 S.W.2d at 171.

### EGREGIOUS HARM ANALYSIS

Having found the *Charge of the Court* to contain error, we must proceed to the second step of an *Almanza* analysis by determining whether such error was egregious. *Arteaga*, 521 S.W.3d at 338. As stated before, errors that result in egregious harm are those kinds of errors that affect "'the very basis of the case,' 'deprive the defendant of a valuable right,' or 'vitally affect a defensive theory.'" *Id.*

In order to determine the actual degree of harm, an appellate court must examine "the entire jury charge, the state of the evidence, including the contested issues and weight of the probative evidence, the argument of counsel, and any other relevant information revealed by the record of the trial as a whole." *Almanza*, 686 S.W.2d at 171. An egregious harm analysis "is a fact specific one which should be done on a case-by-case basis." *Gelinas v. State*, 398 S.W.3d 703, 710 (Tex. Crim. App. 2013).

### (1) THE ENTIRE JURY CHARGE

Here, the definition of reckless was not properly tailored to the offense of murder. *See Mapolisa v. State*, No. 05-16-00711-CR, 2017 Tex. App. LEXIS 6370, at *16-17 (Tex. App.—Dallas July 11, 2017, pet. ref'd) (mem. op., not designated for publication). Furthermore, the definitions of the culpable mental states of intentional, knowingly, and criminal negligence were overly broad and, therefore, erroneous. By failing to give the jury a proper definition of the applicable culpable mental state, the *Charge of the Court* reduced the State's burden of proof. By omitting the phrases "or the result of his conduct"

10

and "or the result will occur," the jury was permitted to erroneously conclude that Appellant committed or was in the course of committing the felony offense of injury to a child if that juror merely believed that Appellant disregarded the circumstances that existed, as opposed to specifically disregarding the risk that death would result. Because this lower burden of proof is both substantial and repeated with respect to each underlying offense, the incorrect definition of reckless weighs heavily in favor of a finding of egregiousness.

This error was further emphasized by the failure of the application paragraphs to include an application of the law concerning the elements of the offenses of injury to a child and child endangerment to the particular facts of this case. Although those elements were included in the abstract portion of the court's charge, and in the application paragraphs pertaining to lesser-included offenses, the failure to include those elements in the application paragraph pertaining to the primary charge of murder only added to the possibility of confusion and weighs in favor of a finding of egregiousness.

Additionally, the application paragraph pertaining to both the offense of injury to a child and child endangerment erroneously includes a comment on the weight of the evidence by combining two essential facts—a finding that Appellant committed some act or omission with a finding that the particular act or omission found was an act clearly dangerous to human life.

As presented, the *Charge of the Court* presumptively assumes that "administering diphenhydramine" or "causing [the infant] to ingest diphenhydramine" to be an act clearly dangerous to human life. Specifically, the outline format of the application paragraph contained in the *Charge of the Court* listed the fourth element of the offense as follows:

11

4. did then and there commit or attempt to commit an act clearly dangerous to human life, *namely*, by administering diphenhydramine to [the victim] and/or causing [the victim] to ingest diphenhydramine; . . . .

(Emphasis added). In doing so, the court inadvertently combined two separate elements: (1) a finding regarding the commission of an act and (2) a finding that such act was clearly dangerous to human life. More importantly, by combining these separate elements, the court has commented on the weight of the evidence. By stating "an act clearly dangerous to human life, *namely*, administering diphenhydramine to [the victim] and/or causing [the victim] to ingest diphenhydramine," the court has grammatically stated that these particular acts are *ipso facto* clearly dangerous to human life. Nowhere is Appellant assured of an independent jury finding that such acts were committed; and, if committed, whether those acts constituted acts "clearly dangerous to human life."

As discussed further below, the jury heard testimony that some pediatricians and parents of young infants believe that administering diphenhydramine in appropriate doses, over appropriate intervals, is an acceptable health care practice for young infants. As such, it was of critical importance that the jury be asked to determine whether Appellant committed those acts, and, if so, whether those acts were, in fact, "clearly dangerous to human life." By commenting on the evidence to the effect that Appellant's conduct amounted to an act clearly dangerous to human life, the applicability of a defensive theory (namely, that administering diphenhydramine to an infant is not an act *clearly dangerous* to human life) was vitally affected. By combining separate elements into one element, this instruction runs afoul of the requirement that the charge "distinctly" set forth the law applicable to the case. In summary, an overall review of the entire

12

*Charge of the Court* reveals numerous errors, weighing heavily in favor of a finding of egregiousness.

### (2) THE STATE OF THE EVIDENCE

No one disputes that the death of the infant in this case was a terrible tragedy. Similarly, no one seriously maintains that Appellant intended to cause the infant's death. Therefore, when it comes to the matter of "intent," the State's evidence, at best, shows that Appellant intentionally engaged in conduct that ultimately caused the infant's death—but that alone is not murder. Under an intentional conduct theory, the prosecution must prove that the accused intended to *cause the death*—a theory entirely different from one based merely on the intentional nature of the conduct alone. As such, because the State's theory was based in large part on the theory that Appellant was either reckless or criminally negligent in the commission of either injury to a child or child endangerment, the issue of recklessness was a critical component of the State's case. Because recklessness was so critical to the State's case, the proper definition and application of that term took on greater significance. Resultantly, the erroneous definition and application of that term also took on greater significance—thus favoring a finding of egregiousness.

Additionally, the evidence presented to the jury left open real and significant factual issues. Did Appellant actually administer the diphenhydramine, or was it possible that someone else administered it? If Appellant did administer the diphenhydramine, in doing so did she recklessly cause bodily injury to the infant or did she recklessly place the infant in imminent danger of death or bodily injury? Furthermore, was the administration of

diphenhydramine to the infant an act clearly dangerous to human life? Did the diphenhydramine actually cause the infant's death, or was it merely a contributing factor? While in an air-tight case, where the guilt of the accused is not in question, errors in the charge may be more forgivable, this was not that kind of case. Because the state of the evidence left substantive questions for the jury to decide, the *Charge of the Court* was of utmost importance—further supporting the conclusion that the error was egregious.

### (3) THE ARGUMENTS OF COUNSEL

A prosecutor is entitled to, indeed expected to, zealously represent the best interests of the State. *Ex parte Peterson*, 117 S.W.3d 804, 815 (Tex. Crim. App. 2003), *overruled on other grounds*, *Ex parte Lewis*, 209 S.W.3d 335, 371 (Tex. Crim. App. 2007). That being said, article 2.01 of the Texas Code of Criminal Procedure provides that "it shall be the primary duty of all prosecuting attorneys . . . not to convict, but to see that justice is done." TEX. CODE CRIM. PROC. ANN. art. 2.01 (West 2005). Here, the prosecution made the conscious decision to pursue a murder conviction based, in part, upon the theory that Appellant recklessly or with criminal negligence committed the offenses of either injury to a child or child endangerment.

From the beginning of trial through the end of closing arguments, the prosecution emphasized the reckless nature of the conduct that Appellant was accused of committing. In doing so, it seems apparent that the prosecution did not understand the distinction between a "result-of-conduct" offense and a "nature of conduct" offense. Time and again, the prosecutor told the jury that a conviction in this case could be based on reckless conduct alone. Specifically, during *voir dire*, the prosecuting attorney repeatedly

14

emphasized that a felony murder conviction could be based upon reckless or criminally negligent conduct. At one point the prosecutor stated, "[i]n this particular statute [section 19.02(b)(3) felony murder] you do not have to knowingly or intentionally cause the death of an individual. You have to knowingly or intentionally or recklessly engage in one of these other felony offenses, injuring a child or endangering a child." The State went on to explain, "[t]he State has alleged in this case that the defendant injured the child – either intentionally or knowingly or recklessly injured the child or intentionally or knowingly or recklessly endangered the child." By emphasizing the "nature of the conduct," as opposed to the "result of the conduct," the prosecution de-emphasized the requirement of a causal connection between not only the conduct and the injury, but also between the "act clearly dangerous to human life" and the resultant death. An argument that does not clearly focus the jury on the task before it, but, instead, muddies the water, is an argument that weighs in favor of a finding of egregiousness.

### (4) ANY OTHER INFORMATION REVEALED BY THE ENTIRE RECORD

A review of the entire record illustrates the inherent risks of relying upon reckless or criminally negligent injury to a child or reckless or criminally negligent child endangerment as the underlying felony offense for the offense of felony murder. In a case such as this, where the prosecution is relying upon multiple theories as to the underlying offense making the death in this case punishable as a felony murder, as well as multiple theories as to the applicable culpable mental state for that underlying offense, it is critical that the charge of the court correctly set forth the law applicable to the case. Again, this argument favors a finding of egregiousness.

15

**CONCLUSION**

Having concluded that the jury charge presented in this case contained an erroneous definition of reckless, and having considered the court's charge as a whole, the arguments of the prosecution, the state of the evidence, and other relevant factors, we conclude that such error deprived Appellant of her right to a fair trial and vitally affected at least one of her defensive theories. As such, the error was egregious. Finding the error egregious, we reverse the judgment of the trial court and remand the cause for a new trial.

Patrick A. Pirtle
Justice

Publish.